MAY TERM, 1881, No. 21.　　　　　　　MAY 25TH, 26TH, 1881.

## Horton *et al. versus* Hall.

1. In an action upon the case to recover damages for interference with the use of the plaintiff's saw and shingle-mill caused by tan-bark and other refuse cast into the stream above, at the tanneries of the defendants, evidence as to the proximity and quantity of timber belonging to the plaintiff is relevant.

2. The producing power of the mill, and the profits in operating it when unobstructed, are pertinent facts in fixing the amount of damages.

3. It would be error to admit evidence of the obstructed condition of the pond of plaintiff after suit brought, as a basis for damages; but such evidence, accompanied by testimony that it was in the same condition during the period for which damages were claimed is admissible.

4. The ability of the mill to be run with profit without the obstruction is a fact clearly admissible.

5. Any special contracts the plaintiff may have had, or been able to obtain, are not such speculative or anticipated profits as should be excluded from the jury, and for the Court to decline to instruct the jury not to consider them is not error.

6. Though single sentences may be found in a charge subject to criticism, yet if the charge, taken as a whole, is not calculated to mislead, and contains a just statement of the law, the judgment will not be reversed.

ERROR to the Court of Common Pleas of *Warren County.*

Case by Orris Hall against Webb Horton, Walter Horton, Isaac Horton, Jerry Crary, H. H. Crary, Jacob Schoellkopf, and George Dixon, to recover damages for interfering with the use of plaintiff's saw-mill by causing large quantities of tan-bark and refuse to be cast into the stream above.

The summons was issued January 19th, 1877. The *narr.* set forth the ownership of the mill, the injury, and " that the said plaintiff was unable to use his said saw- and shingle-mill with advantage and profit, and has for a great length of time, to wit, from the said first day of March, A.D. 1871, down to the bringing of this suit, been deprived of the use, benefit, and advantage of the said stream of water as fully and unobstructedly as he was and is entitled to the same for the propelling of his said mills, and the floating of logs and other uses incident to the said mills, and by means whereof the said plaintiff, during all the time aforesaid, the profits of his said saw- and shingle-mill aforesaid, has lost," etc.

Plea of not guilty, with leave, etc.

Upon the trial of the case in the Court below the following facts appeared:

Plaintiff was the owner of a saw-mill on the north fork of the Tionesta creek, in Warren County, the building being 60 by 80 feet in dimensions. The mill consisted of one circular and one upright saw, and a shingle-mill. It was built in 1846–1847, rebuilt in 1856–1857, and repaired thoroughly in 1870, and was capable of cutting two or three millions of boards a year when free from obstructions. The capacity of the pond for holding logs, outside of the main channel of the stream, was large. Seven or eight thousand logs could be safely stored by putting a boom across to prevent them coming out into the main channel. Prior to 1872 and 1873 the pond was in good condition, and no deposit of sawdust had come down to interfere with the proper use of the mill.

The defendants owned two tanneries upon the stream, about a mile above, which consumed from ten to twenty thousand cords of bark a year. They were built in 1867. In 1874 the pond filled up with the tan-bark very much. In 1875 it filled up to the top of the slash, the whole area of the pond. It was testified that the effect of this was to shut the water out of the pond, diminish the water capacity, and prevent the floating of the logs. In 1875 and 1876 the use of the mill was not worth anything. This bark came from the defendants' tanneries.

Plaintiff stopped his mill in 1873, and made no arrangements to run it in 1874, from the fact that the price of lumber was very low.

The plaintiff being on the stand, his counsel proposed to show the timber owned by the plaintiff in proximity to the mill, and used in connection with the mill, for the purpose of showing the damage sustained by him.

The offer was admitted, under objection and exception, and the witness testified:

"I have about three thousand acres of land around the mill and adjacent to it. A great portion of that is hemlock,—probably a million or two of pine; is very convenient to the mill; probably a half mile from the head of the pond is the location of the pine."

Counsel further proposed to ask the witness what his losses were during the years 1875 and 1876 in consequence of the obstructions to the mill and pond in question.

Offer objected to, and admitted under exception.

The witness answered:

"I think $2000 a year. When I speak of the $8000 I mean taking the timber and everything into consideration."

The witness also testified that he had contracts with a man by the name of Taylor for decking, and it was upon them he based his losses.

[Horton *et al. v.* Hall.]

Counsel further proposed to ask the witness the market value of the kind of lumber he proposed to make in 1875 and 1876.

Offer admitted under objection, and excepted to.

The witness answered: "It was worth $20 a thousand at Sheffield, on the cars."

Plaintiff's counsel further proposed to prove by H. J. Miller the condition of the mill-pond in the summer of 1877, to be followed by evidence showing that its condition in 1877 was similar to its condition before bringing suit.

Offer objected to, and admitted under exception.

The witness testified that the condition of the pond was about the same in 1877 as in 1876. He and other witnesses then testified to the effect that they had hard work to get through the main channel with a boat. Along the bottom was principally tan-bark. There was tan-bark along the banks on each side, and from shore to shore, except the main channel, clear up to the dug-way. The tan-bark varied in depth from eighteen inches to two feet and a half or three feet in the main channel.

Counsel for plaintiff asked the Court to charge, *inter alia*,

2. If the jury believe, from the evidence, that plaintiff was the owner of a mill upon the Tionesta creek, that the defendants, owning or occupying a tannery upon or near said creek, and above plaintiff's mill, cast, or caused to be cast, into the creek quantities of tan-bark and other refuse which by the current of the water was carried down the stream and deposited in the milldam of the plaintiff in such quantities as materially to interfere with the profitable use of his mill, the plaintiff is entitled to recover as damages the loss of profits occasioned thereby down to the time of the commencement of this suit.

4. That the measure of damages is the injury actually sustained by the plaintiff by the reason of the wrongful acts of defendants; and if the jury believe from the evidence that as the immediate consequence of the wrong complained of plaintiff suffered damages, he is entitled to recover compensation to the full amount of such damages, and this whether in general the business of manufacturing lumber was or was not depressed during the years for which the damage is claimed.

The Court below, WETMORE, P. J., affirmed the second point, and as to the fourth, answered:

The fourth point is affirmed, except the following words: " and this whether in general the business of manufacturing lumber was or was not depressed during the years for which the damage is claimed." If the mill, with its surroundings,

[Horton *et al. v.* Hall.]

including timber lands connected therewith, could have been carried on in making and marketing lumber in the usual way at a profit to the owner, then an interruption in the use of the mill by defendants, by which profits were lost, would entitle plaintiff to recover. If the depression in the lumber market was such that in running the mill, manufacturing and marketing lumber in the usual way no profit would have accrued to the owner, then no damage would have resulted.

Counsel for defendant asked the Court to charge, *inter alia*,

2. If the plaintiff is entitled to recover anything, the measure of damages is the difference between the annual value or use of his mill, unaffected by the deposit, and as affected by it. The jury cannot consider any prospective or anticipated profits which the plaintiff claims he might have made; nor any special contracts which he may have had, or been able to obtain; all such evidence should be disregarded.

The Court answered this point:

The second point is affirmed, except the following words: "The jury cannot consider any prospective or anticipated profits which the plaintiff claims he might have made." For answer to this part of the point, reference is made to the qualification in answer to plaintiff's fourth point.

The Court charged the jury, *inter alia*, as follows:

"You will determine, from the evidence, whether the defendants did use their tanneries in such a way as to only permit the escape of the tan-bark that was necessary and unavoidable. If you come to the conclusion that was all that was permitted to escape, they would not be liable in this case. If you come to the conclusion, from the evidence, that they either threw into the stream or permitted the escape of the tan to the extent we have indicated, so as to impair the rights of the plaintiff, in the manner stated, then the plaintiff is entitled to recover damages in this suit.

"In case you find the plaintiff entitled to recover, then your attention is directed to the amount of damages to which he is entitled.

"The plaintiff was in possession of a mill which has been fully described to you by the witnesses. In connection with the mill he had lands which he was using and occupying.

["We say to you, that if he was interrupted in the use of his mill in consequence of the accumulation of tan-bark that had floated into the pond from the tanneries of the defendants, and by that interruption he did not, or could not, run his mill to advantage, and in consequence thereof he sustained loss, or he was deprived of profits which he would have had had he been permitted to run his mill in the ordi-

[Horton *et al. v.* Hall.]

nary way, and manufacturing and marketing the same,—we say to you the extent to which he was thus deprived of profits from the use of the mill would be the damages which he would be entitled to recover in this suit. If, on the other hand, owing to the condition of the lumber market in the years that he alleges he was deprived of his property, there would have been no profit in the use of the mill, taking it in connection with the surroundings, its location, the timber land connected therewith, situated as it was, then there would be no damages sustained in consequence of the interruption by the acts of the defendants.] If there was no damage, there could be no recovery.

"If you find there was a material interruption, and you come to the conclusion that in consequence of that interruption no damage was done to the plaintiff, situated as he was, then there can be no recovery.

["You will determine, first, whether the deposit of tan in the pond, in the manner we have indicated, rendered the defendants liable. If you come to that conclusion, then you will determine whether there was any injury sustained by the plaintiff in consequence of being deprived of the use of his property, in consequence of this deposit and interruption to his mill. If you come to the conclusion that there was no damage, you will find for defendants. If you come to the conclusion that there was, then you will determine, from the evidence, the damages the plaintiff sustained in consequence of the wrongful acts of the defendants in thus causing the pond to be filled up.]

"In getting at the amount of damages you will consider the time that has elapsed. The claim is for the interruption for the years 1875 and 1876. Suit was brought to March term, 1877."

Counsel for defendants excepted to the answers to the above points and to the charge.

January 10th, 1880. Verdict for the plaintiff for $800, and subsequently judgment thereon.

Defendants took out a writ of error, assigning as error the admission of the testimony, and the answers to the points as above set forth, and the portions of the charge in brackets.

*Charles H. Noyes* and *Brown & Stone* for plaintiffs in error.

The condition of the pond after suit brought was immaterial, and the large amount of testimony introduced to show that it was filled up in 1877 was irrelevant. The offer to show that the condition of the pond before bringing suit was similar to its condition in 1877 did not make it competent;

Canal Co. *v.* Barnes, 31 Penna. State, 193 ; Railroad Co. *v.* Decker, 82 Penna. State, 119.

As to the measure of damages.

The proper measure of damages can be easily ascertained from the declaration itself, which only claims for the loss of the convenient use of the saw-mill and pond.

How much less was that use worth in 1875 or 1876 by reason of the acts of the defendants? Profits in any other sense, either from special jobs by contract, or from the lumbering business as usually carried on, are certainly too remote, and not covered by the pleadings : Laing *v.* Colder, 8 Penna. State, 479 ; Good *v.* Mylin, Ibid., 51 ; Seely *v.* Alden, 61 Penna. State, 302 ; McKnight *v.* Ratcliff, 44 Penna. State, 156.

It was erroneous to leave the jury at liberty to find the profits plaintiff might have made out of alleged contracts : Navigation Co. *v.* Richards, 57 Penna. State, 142.

The charge was confused and indefinite : Morris *v.* Platt, 32 Conn., 75 ; Railroad Co. *v.* Kelly, 31 Penna. State, 372 ; Railroad Co. *v.* Books, 57 Penna. State, 339 ; Railroad Co. *v.* Adams, 7 W. N. C., 329.

*Wilbur & Schnur,* for defendant in error, cited Seely *v.* Alden, 61 Penna. State, 302 ; Railroad Co. *v.* Dale, 26 P. F. Smith, 47.

The opinion of the Court was delivered by MERCUR, J.

The defendant in error was entitled to a reasonable use of the water of the stream for the purpose of operating his mill and machinery, and of the pond for the storage of logs, and for moving them and getting them to his mill, without any undue obstruction or check by the owners of the tanneries above. The latter were not liable in damages for such interruptions of the water, as necessarily and unavoidably resulted from their reasonable use. The learned judge correctly stated the law as to the relative rights of the parties to the use of the water, and to this no error is assigned. The main objections are to the admission of evidence, and to the measure of damages.

The producing power of the mill, and the profits in operating the same when unobstructed by the acts of the plaintiff in error, are pertinent facts in fixing the amount of damages. The facilities and expense of getting logs to the mill, and the cost thereof, undoubtedly affect the profits arising from the manufacture of lumber. Evidence of the proximity and quantity of timber belonging to the owner of the mill was therefore relevant.

[Lauth *et al. v.* Walker.]

The claim was for damages sustained by obstructions in the pond in the years 1875 and 1876. The suit was brought in January, 1877. It would have been error to admit evidence of the condition of the pond after suit brought as a basis for damages; but no damages were claimed for that year. The evidence of its condition in 1877 was followed by showing that to be the same condition it was in the previous year, and the damages prior to 1877.

Damages for injury to property vary according to the nature and character of the property. The value of a mill depends on the profits which result from its being kept in operation. Whatever interrupts the use thereof, so that it cannot be worked to advantage, causes loss and damage. The ability of the mill to be run with profit, without the obstruction, was a fact clearly admissible in evidence. The Court correctly said: " The measure of damages is the difference between the annual value or use of his mill, unaffected by the deposit and as affected by it." Nor did it err in declining to instruct the jury not to consider any special contracts which he may have had or been able to obtain. They were not such speculative or anticipated profits as to exclude them from the jury. Whether or not the business of manufacturing lumber was depressed during the years in question, might seriously affect the profits, and consequently lessen the damages of an interruption; yet it by no means barred the right of the defendant in error to recover for actual damages sustained as the immediate consequence of the wrongful act of the plaintiffs in error. The compensation might be less, but whatever it was he was entitled to receive it. We do not deem it necessary to consider all the assignments *seriatim.* Single sentences might be found in the charge subject to criticism; yet, taken as a whole, it is not calculated to mislead, and contains a just statement of the law: Pennsylvania Railroad Co. *v.* Dale, 26 P. F. Smith, 47.

Judgment affirmed.